UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Catherine Vouk,

          Plaintiff,               Court File No.  17-cv-3257 (DWF/LIB)

     v.                    **REPORT AND RECOMMENDATION**

Nancy A. Berryhill,
Acting Commissioner of Social Security,[1]

          Defendant.

      Plaintiff, Catherine Vouk ("Plaintiff"), seeks judicial review of the decision of the Commissioner of Social Security ("Defendant") denying her application for disability benefits by the Social Security Administration ("SSA"). The District Court has referred the present case to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. This Court has jurisdiction over the claims pursuant to 42 U.S.C. § 405(g).

      Both parties submitted cross-motions for summary judgment, [Docket Nos. 12, 14], and the Court took the matter under advisement on the written submissions. For the reasons discussed below, the Court recommends that Plaintiff's Motion for Summary Judgment, [Docket No. 12], be **DENIED**, and that Defendant's Motion for Summary Judgment, [Docket No. 14], be **GRANTED**.

---

[1] After the filing of this lawsuit, Nancy A. Berryhill's official title became "Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security"; however, in the present case, Defendant continues to use the caption including the "Acting Commissioner of Social Security" designation without acknowledgment of her new official title. (See, Answer [Docket No. 8]; Def.'s Motion [Docket No. 14]). For that reason, the Court maintains the "Acting Commissioner of Social Security" designation in the present case caption.

## I. PROCEDURAL HISTORY

On January 30, 2012, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II. (Tr. 134).[2] Plaintiff alleged that her disability began on November 27, 2007. (Tr. 171). The Commissioner denied Plaintiff's claims on May 11, 2012, and again, upon reconsideration, on June 14, 2012. (Tr. 171). Thereafter, on June 20, 2012, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 171).

Administrative Law Judge Larry Meuwissen conducted a hearing on June 17, 2013. (Tr. 171). On August 23, 2013, ALJ Meuwissen issued a decision denying Plaintiff's request for a period of disability and disability insurance benefits. (Tr. 171–182). The ALJ concluded that Plaintiff was not disabled within meaning of the Social Security Act. (Tr. 182).

Plaintiff thereafter sought review of the decision by the Appeals Council. (Tr. 188–191). Subsequently, on January 13, 2015, the Appeals Council granted Plaintiff's "request for review under the substantial evidence and new and material evidence provisions of the Social Security Administration regulations . . . ." (Tr. 188). Accordingly, the Appeals Council vacated the August 23, 2013, hearing decision, and it remanded Plaintiff's case to an Administrative Law Judge for resolution of the identified issues. (Tr. 181–191). Pursuant to that remand, Administrative Law Judge Roger Thomas ("ALJ") provided Plaintiff with a hearing date of August 27, 2015.

Prior to the August 27, 2015, hearing, ALJ Thomas received from medical expert Dr. Mary Stevens, Ph.D., L.P., responses to a set of written interrogatory questions authored by ALJ Thomas. (Tr. 10).

---

[2] Throughout this Report and Recommendation, the Court refers to the Administrative Record, [Docket No. 9], by the abbreviation "Tr." Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of the Administrative Record.

ALJ Thomas conducted a hearing on August 27, 2015. (Tr. 10). Plaintiff along with an independent vocational expert, L. Russell ("IVE Russell"), and an independent medical expert, Dr. Andrew Steiner, M.D., testified at the hearing. (Tr. 10). Plaintiff was represented by an attorney at the administrative hearing. (Tr. 10).

After the hearing, Plaintiff submitted additional exhibits to ALJ Thomas. (Tr. 10). Dr. Stevens reviewed this additional evidence in October 2015, and she submitted amended responses to the previous ALJ interrogatories. (Tr. 10). After these amended responses were provided to Plaintiff, she requested a supplemental hearing to cross examine Dr. Stevens on the change of her opinion. (Tr. 10).

The requested supplemental hearing was conducted on February 22, 2016. (Tr. 10). Dr. Stevens testified at that hearing, but no independent vocational expert was present. (Tr. 10).

A second supplemental hearing was held on April 13, 2016. (Tr. 10). At this second supplemental hearing, independent vocational expert Wayne Onken testified.

On May 4, 2016, ALJ Thomas issued a decision denying Plaintiff's request for a period of disability and disability insurance benefits. (Tr. 10–26).[3] The ALJ concluded that Plaintiff was not disabled within meaning of the Social Security Act. (Tr. 26).

Plaintiff thereafter sought review of the decision by the Appeals Council. (Tr. 1–3). Subsequently, on May 25, 2017, the Appeals Council denied Plaintiff's request for review. (Tr. 1). Accordingly, the ALJ Thomas' decision became the final decision of the Commissioner. See, 20 C.F.R. §§ 404.981, 416.1481.

On June 24, 2017, Plaintiff filed the present action. (Compl. [Docket No. 1]). Thereafter, both parties submitted cross-motions for summary judgment, [Docket Nos. 12, 14], and the

---

[3] This is the only disability determination at issue in the present case.

Court took the matter under advisement on the written submissions pursuant to the Local Rules for this District.

## II. STANDARDS OF REVIEW

### A. Administrative Law Judge's Five-Step Analysis

If a claimant's initial application for disability benefits is denied, she may request reconsideration of the decision. 20 C.F.R. §§ 404.907–404.909. A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge ("ALJ"). 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis. This analysis requires the ALJ to make a series of factual findings regarding the claimant's impairments, residual functional capacity, age, education, and work experience. See, 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also, Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

If it is determined that the claimant is disabled, and it is determined that there is medical evidence of a substance use disorder, the ALJ must then determine if the substance use disorder is a contributing factor material to the determination of disability. See, Mittlestedt v. Apfel, 204 F.3d 847, 851 (8th Cir. 2000); 20 C.F.R. § 404.1535. To make this determination, the ALJ must

evaluate the extent to which the claimant's mental and physical limitations would remain if the claimant stopped the substance use. 20 C.F.R. § 404.1535. If the limitations which remain would not be disabling without the substance abuse, the substance abuse disorder is a contributing factor to the determination of disability, and the claimant is not disabled. Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002).

### B.  Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, she may request review by the Appeals Council, although the Appeals Council need not grant that request for review. See, 20 C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the Appeals Council's action. See, 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

In the present case, the Appeals Council declined to review ALJ Thomas's decision finding that Plaintiff was not disabled. (Tr. at 1–3).

### C.  Judicial Review

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps. Judicial review of the Commissioner's decision to deny disability benefits, however, is constrained to a determination of whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but is enough

that a reasonable mind would find it adequate to support the Commissioner's conclusion." Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The claimant bears the burden under the Social Security Act of proving that she is disabled. See, 20 C.F.R. § 404.1512(a); Whitman v. Colvin, 762 F.3d 701, 705, (8th Cir. 2014). Once the claimant has demonstrated she cannot perform prior work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

The claimant also bears the "burden of proving her substance abuse is not a contributing factor material to the claimed disability." Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002).

## III. ALJ DECISION UNDER REVIEW

In present case, Administrative Law Judge Roger Thomas ("ALJ") made the following determinations during the five-step disability evaluation process:

At step one, the ALJ concluded that Plaintiff had not engage in substantial gainful activity since November 27, 2007, through at least, March 31, 2013, the date Plaintiff last met the insured status requirement. (See, Tr. 13). This finding is not in dispute. The Court will refer to this period as "the adjudicated period."

At step two, the ALJ concluded that Plaintiff "had the following severe combination of impairments: major depressive disorder, recurrent (31F); bulimia nervosa (31F); personality disorder, not otherwise specified (31F); a long-standing history of sever alcohol dependence (31F); methamphetamine dependence (31F); opioid dependence (31F); left hip pain attributed to degenerative joint disease and osteoarthritis, and treated with a total hip arthroplasty occurring August 2011 (1F/12, 34, 8F/2); low back pain, attributed to degenerative disc disease and facet osteoarthritis (29F/6); and central and obstructive sleep apnea." (Tr. 13–14). Plaintiff does not challenge these findings.

The ALJ determined that "[a]fter careful consideration of all the evidence," Plaintiff was "credible concerning her mental symptoms and limitations but only in the context of her drug and alcohol abuse." (Tr. 15). Plaintiff does not challenge this credibility determination.

At step three, the ALJ concluded that Plaintiff's impairment, with the inclusion of Plaintiff's substance use disorders, met the severity of listings 12.04, 12.07, 12.08, and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14). Specifically, the ALJ found that because Plaintiff's "mental impairments, including the substance use disorders, cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, the

'paragraph B' criteria are satisfied." (Tr. 14–15). Similarly, the ALJ found that "[t]he 'paragraph A' criteria [were] satisfied because [Plaintiff] demonstrated the requisite symptomatology." (Tr. 14). Plaintiff does not challenge this finding.

Because the ALJ determined that Plaintiff's impairment, with the inclusion of Plaintiff's substance use disorders, met the severity of listings 12.04, 12.07, 12.08, and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1, and therefore, determined that Plaintiff, with the inclusion of her substance use disorders, was disabled, the ALJ was required to determine if the substance use disorder was a contributing factor material to the determination of disability. See, Mittlestedt, 204 F.3d at 851 (8th Cir. 2000); 20 C.F.R. § 404.1535. To make a determination as to whether or not the substance use disorder was a contributing factor material to the determination of disability, the ALJ assessed steps three, four, and five as if Plaintiff had stopped the substance use. See, Id.

In evaluating step three, without the inclusion of Plaintiff's substance use disorders, the ALJ noted that if Plaintiff "stopped the substance use, the remaining limitation would cause more than a minimal impact on the [Plaintiff's] ability to perform basic work activities." (Tr. 15). However, ALJ concluded that, if Plaintiff stopped the substance use, she "would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Tr. 15). Plaintiff challenges the finding that the substance abuse disorder was material to the finding of disability, and therefore, she implicitly challenges this finding at step three of the ALJ's decision.

In evaluating step four of the process, without the inclusion of Plaintiff's substance use disorders, the ALJ made the following RFC determination:

> If the claimant stopped substance use, the claimant would have had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)

except no work with unprotected, dangerous machines or [a]t unprotected heights; no more than occasional bending and twisting; no kneeling, crouching, or crawling; occasional stooping and balancing; no more than simple, unskilled tasks; no more than brief and superficial contacts with others, akin to an "8" in the fifth digit of the Dictionary of Occupational Titles' Specific Characteristics of Occupations; and in a setting where alcohol or drugs are not sold, served, or readily available.

(Tr. 17–18). In making this RFC determination, the ALJ, considering the record as a whole, found that, if Plaintiff stopped the substance use, her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however," the ALJ also noted that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence on the record for the reasons explained in [his] decision." (Tr. 18). Based on this RFC determination, the ALJ found that, if Plaintiff stopped the substance use, she would have been unable to perform her past relevant work. (Tr. 24). Plaintiff challenges the finding that the substance abuse disorder was material to the finding of disability, and therefore, she implicitly challenges the ALJ's RFC determination.

Finally, in evaluating step five of the process, without the inclusion of Plaintiff's substance use disorders, the ALJ concluded that, if Plaintiff "stopped the substance use, considering [her] age, education, work experience, and residual functional capacity, there would have been a significant number of jobs in the national economy that the claimant could have performed . . . ." (Tr. 25–26). Relying upon testimony from the independent vocational expert, Wayne Onken, the ALJ specifically found that, among the occupations Plaintiff would be able to perform, if she stopped the substance use, were bench assembler (Dictionary of Occupational Titles No. 706.684-022) of which there are 1,100 positions in the Minnesota economy, as well as, over 50,000 positions in the national economy, and assembler of small products (Dictionary

of Occupational Titles No. 739.687-030) of which there are 1,000 positions in the Minnesota economy, as well as, 45,000 positions in the national economy. (Tr. 25). Plaintiff challenges the finding that the substance abuse disorder was material to the finding of disability, as well as, implicitly challenges the RFC determination upon which this step five finding is based, and therefore, implicitly challenges the ALJ's findings at step five.

The ALJ determined that Plaintiff's substance use disorder was "a contributing factor material to the determination of disability because" Plaintiff "would not have been disabled if she stopped the substance use (20 CFR 404.1520(g) and 404.1535)." (Tr. 26). The ALJ found that "[b]ecause the substance use disorder [was] a contributing factor material to the determination of disability, Plaintiff "was not disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of last insurance." (Tr. 26). Plaintiff challenges this finding.

Accordingly, the ALJ found that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period. (Tr. 24–25). Plaintiff also challenges this finding.

## IV. ANALYSIS

Plaintiff raises one overarching issue on appeal: her assertion that ALJ's determination that Plaintiff's substance use disorder was a contributing factor material to the determination of disability was in error as it was not supported by substantial evidence. (Plf.'s Mem. [Docket No. 13]). Plaintiff argues that the ALJ's determination was not supported by substantial evidence for four reasons: (1) "Substantial evidence in the record as a whole does not support a finding that [Plaintiff's substance use] is material, particularly in light of [Plaintiff's] almost-six year period

of sobriety between December 2005 and November 2011"; (2) the "[ALJ's][4] conclusion that [Plaintiff's substance use] was material as it related to "Part B" of the mental health listing is legally erroneous because the only two pieces of evidence Defendant cited support the opposite conclusion"; (3) the "[ALJ's] adopting of ME Stevens's conclusion is not supported by substantial evidence in the record as a whole and constitutes legal error"; and (4) the "[ALJ's] failure to accept the statement of a treating source regarding the issue of materiality constitutes legal error." (Id. at 12–40).

### A.  Substantial Evidence

Plaintiff first argues that "[s]ubstantial evidence in the record as a whole does not support a finding that [Plaintiff's substance use] is material, particularly in light of [Plaintiff's] almost-six year period of sobriety between December 2005 and November 2011," and therefore, the ALJ's determination itself is not support by substantial evidence. Plaintiff asserts that her early medical records demonstrate that, during her "almost-six year period of sobriety," her "overlapping mental health and sleep issue severely limited her ability to function during her long period of abstinence," and therefore, she "met 'Part B' criteria of the mental health listing and did not have the residual functional capacity to engage in substantial, gainful activity." (Plf.'s Mem., [Docket No. 13], at 12–30).

In other words, Plaintiff asserts that because her impairments "severely limited her ability to function" to the extent she "met 'Part B' criteria of the mental health listing and did not have the residual functional capacity to engage in substantial, gainful activity" during her alleged "six year period of sobriety between December 2005 and November 2011," her substance use

---

[4] Throughout her pleadings in the present case, Plaintiff references the decision of the "Defendant," as well as, conclusions of the "Defendant" while citing to the May 4, 2016, decision of ALJ Thomas and the conclusions therein. (See, e.g., Plf.'s Mem., [Docket No. 13], at 31). The May 4, 2016, decision was the decision of ALJ Thomas not Defendant Nancy A. Berryhill.

disorder could not have been material to the determination of disability. Plaintiff's assertion is unpersuasive for several reasons.

First, the record fails to indicate that Plaintiff had a period of sobriety from "December 2005 and November 2011." As the ALJ noted, Plaintiff appears to have been sober from 2007 to 2009; however, she reported drinking from 2010 to at least 2015. For example, on May 8, 2015, Plaintiff reported that from approximately 2010 through 2015 she drank "off and on" while starting in 2015 she would drink "1/2 gal liq" per day then "not [drink] for a couple weeks," (Tr. 1046); on November 29, 2010, Plaintiff admitted to "relapsing to EtOH" as a form of "stress reduction," (Tr. 674); and on April 16, 2012, Plaintiff reported that from approximately October 2009, to April 2012, she was "consuming ½ liter of vodka three times per week." (Tr. 782). Although Plaintiff points to portion of the record where she reported not drinking, (Plf.'s Mem., [Docket No. 13], at 13 n. 10), she previously reported that she "lied about drinking." (Tr. 1047). The record before the Court simply does not demonstrate that Plaintiff was sober from December 2005 through November 2011.

Second, although Plaintiff argues that "[t]here is no substantial evidence in the record as a whole to support" the ALJ's determination, in support of this argument, Plaintiff only summarizes the portions of the evidence from the record which she believes could support a finding of disability. (See, Plf.'s Mem., [Docket No. 13], at 12–30).

To the extent that Plaintiff argues here that there was also substantial evidence in the record that might have supported a finding of disability, the Court may not reverse the ALJ simply because substantial evidence supports an opposite conclusion. See, Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015). Nor can the Court substitute its own judgment or findings of fact for those of the ALJ, see, Woolf, 3 F.3d at 1213, because the Court "must consider evidence that

both supports and detracts from the ALJ's decision," and "must affirm the denial of benefits if 'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings.'" See, Milam, 794 F.3d at 983 (citations omitted) (emphasis added). Such is the present case now before the Court. Plaintiff mere highlites selective evidence considered by the ALJ, (see, Tr. 15–24), and she asks this Court to reevaluate said evidence to reach a different conclusion than that of the ALJ. This the Court cannot do. See, Milam, 794 F.3d at 983.

Moreover, much of the evidence Plaintiff highlights is based upon her own self reports, and the ALJ specifically found that Plaintiff's statements concerning the "limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence on the record for the reasons explained in [his] decision." (Tr. 18). Importantly, Plaintiff does not contest the finding that her statements concerning the limiting effects of her symptoms were inconsistent with the record as a whole. Here again the Court cannot substitute its own judgment or findings of fact—regarding the consistency of Plaintiff's statements—for those of the ALJ.

Here, Plaintiff simply asks the Court to reweigh the evidence that the ALJ considered, and come to a different conclusion than the ALJ; this the Court cannot do. See, Milam, 794 F.3d at 983; Woolf, 3 F.3d at 1213.

Plaintiff also takes issue with the ALJ assigning "little weight" to Plaintiff's Global Assessment of Functioning (GAF) scores. In assigning such weight, the ALJ noted that "a GAF score is just one tool used by clinicians to develop the clinical picture" which only is "a mere snapshot in time" and "cannot be used in isolation from the rest of the evidence to make a disability decision" because such scores are "highly subjective and less clinically helpful than the mental status examination, which, during [Plaintiff's] period of sobriety, were without significant

13

abnormalities." (Tr. 20–21). The ALJ also noted that "Dr. Stevens testified GAF scores are unreliable" and "were never reliable indicators of a person's functioning" because they "are statistically speaking, 'worthless'." (Tr. 21). Dr. Stevens further testified that the use of GAF scores has "ceased because it was not a valid measure of anything" and " the DSM-V completely did away with Global Assessment of Functioning assessments." (Tr. 21).

While Plaintiff highlights evidence in the record which she believes is consistent with the GAF scores assessed of her[5] and points to other cases where a GAF has been assigned greater weight when they were consistent with the record as a whole, here again Plaintiff asks the Court to reweigh the evidence that the ALJ considered, and come to a different conclusion than the ALJ; this the Court cannot do. See, Milam, 794 F.3d at 983; Woolf, 3 F.3d at 1213. Moreover, the Eighth Circuit Court of Appeals has specifically noted the subjectivity of Global Assessment Functioning scores; recognized an ALJ's discretion in assigning weight to GAF scores; recognized that the Commissioner has, for at least the past ten years, recognized that GAF scores have limited importance; and that "GAF scores have no direct correlation to the severity standard used by the Commissioner." Wright v. Colvin, 789 F.3d 847, 855 (8th Cir. 2015); see, Jones v. Astrue, 619 F.3d 963, 973–74 (8th Cir. 2010); Nowling v. Colvin, 813 F.3d 1110, 1123 (8th Cir.

---

[5] Plaintiff's GAF scores ranged from 50 to 65. (Tr. 675, 683, 713, 719). A history of GAF scores at 50 or below, taken as a whole, and supported by substantial evidence in the record, can demonstrate an inability to participate in gainful employment; however, a history of GAF scores "between 52 and 60, taken, as a whole, indicate" only "moderate symptoms or moderate difficulty in social or occupational functioning." Halverson v. Astrue, 600 F.3d 922, 931 (8th Cir. 2010). To the extent Plaintiff argues that her history of GAF scores, including a GAF score of 50 at the highest end of those scores which—when supported by substantial evidence in the record—could demonstrate an inability to participate in gainful employment, constitutes substantial evidence supporting a finding of disability, that argument is unpersuasive. As Plaintiff concedes, GAF scores are not themselves determinative of a finding of disability; instead, GAF scores are one factor which when support by other substantial evidence in the record may indicate a finding of a person being disabled. In the present case, the ALJ considered the other evidence in the record, including the evidence highlighted by Plaintiff, and determined that the evidence supported a finding that Plaintiff was not disabled. (Tr. 18–24). The Court may not, under the applicable standard of review in the present case, reweigh the evidence the ALJ considered and come to a different conclusion than the ALJ. See, Milam, 794 F.3d at 983; Woolf, 3 F.3d at 1213.

14

2016) ("GAF scores are of little value."); Thomas v. Berryhill, 698 Fed. App'x 323, 324 (8th Cir. 2017).

### B. Mental Health Listings

Plaintiff next takes issue with the substantial evidence supporting the ALJ's determination that if Plaintiff "stopped the substance abuse, the remaining limitations would not meet or medically equal the criteria of listings 12.04, 12.06, 12.07, 12.08, or 12.09" because "[i]n terms of the 'paragraph B' criteria," if she stopped the substance abuse she "would have had mild restriction in activities of daily living"; would have only "moderate difficulties" in social functioning; would have only "moderate difficulties" with regard to concentration, persistence, or pace; and had experience no episodes of decompensation. The ALJ concluded that "[b]ecause the  remaining limitations would not cause at least two 'marked' limitations or one 'marked' limitations and 'repeated' episodes of decompensation, the 'paragraph B' criteria would not be satisfied if [Plaintiff] stopped the substance use."

Plaintiff asserts that the ALJ's determination that "the 'paragraph B' criteria would not be satisfied if [Plaintiff] stopped the substance use" is not support by substantial evidence. (See, Plf.'s Mem., [Docket No. 13], at 32–34). Plaintiff bases this assertion on the fact that the ALJ only cited to "two records: a function report [Plaintiff] completed 3/20/12 (Tr. 422-436), and a consultative mental health evaluation performed on 4/16/12"; records which Plaintiff avers support a conclusion that the paragraph B criteria would be satisfied even if Plaintiff stopped the substance use. (See, Plf.'s Mem., [Docket No. 13], at 32–34). In support of this assertion, however, Plaintiff only summarizes the portions of the record considered by the ALJ in a manner she believes could support a finding that the paragraph B criteria were met. (See, Plf.'s Mem., [Docket No. 13], at 32–34).

Here again, however, Plaintiff merely invites the Court to reweigh the evidence that the ALJ considered, and come to a different conclusion than the ALJ; this the Court cannot do. See, Milam, 794 F.3d at 983; Woolf, 3 F.3d at 1213. Plaintiff does not allege that the ALJ failed to consider the evidence Plaintiff highlights, and in fact, Plaintiff affirmatively asserts that the ALJ did in fact consider said evidence; Plaintiff simply believes that the ALJ should have reached a different conclusion when considering the evidence.

Moreover, although Plaintiff's overall argument here is that the two records indicate that Plaintiff's functionality was severely limited during a period of sobriety, the record before the Court does not demonstrate that the March 20, 2012, Function Report or the April 16, 2012, consultative mental health evaluation reflect any period of sustained sobriety. (Tr. 422–436, 782–785). As noted above, at the April 16, 2012, consultative mental health evaluation Plaintiff reported that from approximately October 2009, to April 2012, she was "consuming ½ liter of vodka three times per week," and on May 8, 2015, Plaintiff reported that from approximately 2010 through 2015 she drank "off and on." (Tr. 782, 1046). Therefore, Plaintiff's argument that these reports show her level of functionality during a sustained period of sobriety is unpersuasive in light of the record as a whole.

### C. Dr. Mary Stevens, Ph.D., L.P.'s Testimony

Plaintiff next argues that "Defendant's adoption of [Dr.] Stevens's conclusion is not supported by substantial evidence in the record as a whole and constitutes legal error." (Plf.'s Mem., [Docket No. 13], 35). Plaintiff asserts that "Defendant's reliance on the opinion of [Dr.] Stevens to support a determination that [Plaintiff's substance use] was material is not supported by substantial evidence in the records as a whole." (Id. at 40).

Dr. Stevens completed her first set of ALJ promulgated interrogatories on March 22, 2015. (Tr. 941–946). In that set of interrogatories, Dr. Stevens indicated that she had reviewed Plaintiff's medical records through June 4, 2013, and she concluded Plaintiff's impairments medically equaled the criteria of Listing 12.04, and she was therefore disabled. (Tr. 944). Thereafter, Plaintiff submitted additional medical evidence; all of the subsequently submitted medical evidence was dated after June 4, 2013. After the submission of the additional medical evidence, Dr. Stevens was directed to answer a Supplemental Medical Interrogatory by the ALJ asking if her opinion had changed in light of the new evidence. (Tr. 1139–1141). In that supplemental answer dated October 3, 2015, Dr. Stevens noted that her opinion had changed as she now opined that if Plaintiff stopped the substance abuse she would be able to perform simple, unskilled work with brief and superficial contact with others in a work environment free from all controlled substances. (Tr. 1140). Dr. Stevens noted that the new medical evidence included the omissions by Plaintiff that she had in fact not been sober during the time of the previously submitted medical evidence. (Tr. 1141). Dr. Stevens concluded that although Plaintiff did meet Listing 12.09 and although Listing 12.09 was Plaintiff's "most significant problem," if she stopped the substance abuse she would be able to work. Thereafter, Plaintiff submitted additional medical evidence, however, Dr. Stevens testified that this additional evidence did not change her revised opinion.

Plaintiff essentially argues that the ALJ erred in assigning "great weight" to Dr. Stevens revised October 3, 2015, opinion. Plaintiff generally appears to base this argument, at least in part, on the fact that Dr. Stevens "has never physically examined" Plaintiff. (Plf.'s Mem., [Docket No. 13], at 35).

The Eighth Circuit has <u>not</u> outright forbidden assigning great weight to the opinions of non-treating, non-examining practitioners: "there are circumstances in which relying on a non-treating physician's opinion is proper." <u>See</u>, <u>Vossen v. Astrue</u>, 612 F.3d 1011, 1016 (8th Cir. 2010). The Eighth Circuit has affirmed ALJ decisions that properly discounted treating physicians' opinions and gave significant weight to state agency assessments. <u>See</u>, <u>Smith v. Colvin</u>, 756 F.3d 621, 626-27 (8th Cir. 2014); <u>Michel v. Colvin</u>, 60 Fed. App'x 585, 593 (8th Cir. 2016) (identifying exceptions to general rule that an ALJ should credit a treating physician's opinion over other medical opinions).

Here, the ALJ clearly articulated why he was assigning greater weight to the opinion of Dr. Stevens. (Tr. 22). Moreover, the Court's independent review of the record as a whole demonstrates that Dr. Stevens' opinion is consistent with and supported by evidence in the record as a whole. As the ALJ specifically noted in his May 4, 2016, decision: Dr. Stevens' "finding are consistent with the substantial evidence, including the overall clinical findings and signs of mental illness; [Plaintiff's] conservative course of and response to mental health treatment; and [her] daily and other activities in the absence of her [substance] abuse." (Tr. 22).

The Court's independent review of the record as a whole shows that there is substantial evidence to support the ALJ's decision to give "great weight" to Dr. Stevens October 3, 2015, opinion that Plaintiff would be able to work if she stopped the substance abuse. The supplemental medical evidence Dr. Stevens received after her initial opinion but before her October 3, 2015, opinion clearly shows that during the timeframe encompassing the original medical evidence submitted by Plaintiff she in fact did not have any sustained period of sobriety. This lack of any sustained period of sobriety was not clear from the medical evidence originally submitted to Dr. Stevens due to omissions from the Plaintiff.

While Plaintiff argues that Dr. Stevens should not have had a change of opinion in her October 3, 2015, opinion because the additional, supplemental evidence did not contain any medical records dated from the "time period of 2008 through June 2013," Dr. Stevens' October 3, 2015, opinion makes clear that Dr. Stevens altered her opinion because the additional, supplemental evidence—although dated after June 2013—shed light on Plaintiff's omissions as to her lack of sobriety before June 2013. (Tr. 782–785).

To the extent Plaintiff argues that there is substantial evidence in the record which is inconsistent with Dr. Stevens' October 3, 2015, opinion, this court may not reverse the ALJ's finding simply because substantial evidence might support a conclusion opposite to the conclusion of the ALJ. See, Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015). Nor can the Court substitute its own judgment or findings of fact for those of the ALJ. See, Woolf, 3 F.3d at 1213. Here, the decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Bradley, 528 F.3d at 1115.

**D.  Dr. Scott Oakman, M.D., Ph.D.**

Lastly, Plaintiff argues that the ALJ committed "reversible legal error" because the ALJ "failed to accept the statement of a treating source regarding the issue of materiality." (Tr. 41–43).

On August 18, 2015, Dr. Oakman drafted a letter concerning Plaintiff's alleged disability. (Tr. 1137). In that letter, Dr. Oakman noted that Plaintiff was his patient from late 2005 through November 2014 during which time she had "long periods of sobriety, as well as some relapses to alcohol." (Tr. 1137). Dr. Oakman opined that during her "long periods of sobriety, [Plaintiff] was significantly disabled by a combination of mental health and physical problems . . . ." (Tr.

19

1137). Dr. Oakman also opined that in his "professional opinion, [Plaintiff] was disabled (at least through November 2014, when [he] last saw her) without regard to her usage of alcohol or drugs. She was disabled during her long periods of sobriety and [he had] no reasons to believe she improved after a new period of sobriety." (Tr. 1137).

Plaintiff appears to argue that the ALJ committed reversible error by not considering the August 18, 2015, opinion of Dr. Oakman. (See, Plf.'s Mem., [Docket No. 41], at 41). The ALJ, however, clearly considered the opinion of Dr. Oakman, and the ALJ discussed Dr. Oakman's opinion at some length. (See, Tr. 23–24). The ALJ expressly considered the opinion of Dr. Oakman, and he assigned that opinion little weight.

Broadly construing Plaintiff's argument it could reasonably be construed that she is also arguing that the ALJ committed reversible error by assigning Dr. Oakman's August 18, 2015, opinion little weight because Dr. Oakman was Plaintiff's "long-time former treating psychiatrist." (See, Plf.'s Mem., [Docket No. 41], at 41).

"[A] treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." Dolph v. Barnhart, 308 F.3d 876, 878 (8th Cir. 2002) (internal quotation marks omitted). However, a treating physician's opinion "do[es] not automatically control, since the record must be evaluated as a whole." Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995).

The Eighth Circuit has held that an ALJ may properly choose not to give controlling weight to the opinion of a treating physician opinion when it is based solely on a claimant's subjective reports of his own pain, or when the opinion is inconsistent with the treating physician's own treatment notes. Papesh v. Colvin, 786 F.3d 1126, 1132 (8th Cir. 2015). Even

20

when a treating physician's opinion is not entitled to controlling weight, the opinion is typically entitled to substantial weight and should not ordinarily be disregarded without good reason. Miller v. Colvin, 784 F.3d 472, 477 (8th Cir. 2015). However, an ALJ may properly choose to give the opinion of a treating physician no weight when it is inconsistent with the overall evidence in the medical record. Papesh, 786 F.3d at 1132. Further, "an ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Miller, 784 F.3d at 477 (quoting Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010)). A treating physician's opinion "on the issue(s) of the nature and severity" of an impairment is given controlling weight when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case. 20 C.F.R. § 404.1527(c)(2). An ALJ may also discount or even disregard a treating physician's medical opinion, and adopt the contrary medical opinion of a consulting physician, when the treating source's statements are conclusory, unsupported by medically acceptable clinical or diagnostic data, or when the ALJ's determination is justified by substantial evidence in the record as a whole. See, Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997); Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991).

In other words, the ALJ is not required to believe the opinion of a treating physician when, on balance, the medical evidence convinces him otherwise. See, Wagner v. Astrue, 499 F.3d 842, 849 (8th Cir. 2007). Moreover, "opinions that a claimant is 'disabled' or 'unable to work' concern issues reserved to the Commissioner and are not the type of opinions which receive controlling weight." Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010) (citing Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005); see also, SSR 96-5p (July 2, 1996) ("Giving

controlling weight to [treating source] opinions would, in effect, confer upon the treating source the authority to make" disability determinations).When an ALJ chooses not to give controlling weight to the opinion of a treating physician, the regulations require that he explain his reasons for doing so. See, 20 C.F.R. § 404.1527(c)(2).

The Court's review of the record indicated that the ALJ's reason for discounting the opinion of Dr. Oakman accurately reflect the state of the record. Dr. Oakman's one-page August 18, 2015, opinion is conclusory and unsupported by medically acceptable clinical or diagnostic data. Moreover, it proffers opinions regarding disability which are reserved to the Commissioner. (Tr. 1137). An ALJ may properly discount the opinion of a treating provider that is unsupported and contradicted by other evidence in the record. Rogers, 118 F.3d at 602; Ghant, 930 F.2d at 639. As noted above, an ALJ may also properly discount the opinion of a treating provider when the treating provider issues an opinion of the type reserved to the Commissioner. Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010).

As such, it was not err for the ALJ to assign little weight to Dr. Oakman's conclusory opinion that Plaintiff was disabled "without regard to her usage of alcohol or drugs." Because the ALJ had a proper basis to discount the conclusory opinion of Dr. Oakman, the ALJ's decision to giver lesser weight to the opinion of Dr. Oakman was within the zone of choice. Robinson, 956 F.2d at 838; Bradley, 528 F.3d at 1115.

Additionally for the reasons stated above, including Plaintiff's lack of consistent, sustained sobriety, the ALJ's decision to discount the opinion of Dr. Oakman was supported by other substantial evidence in the record not specifically delineated by the ALJ. For example, Dr. Oakman noted that, during his treatment of Plaintiff, "she endured long period of sobriety" with "some relapses to alcohol"; however, as more fully discussed above, the record does not indicate

a "long" period of sustained sobriety. While Plaintiff may have been sober from 2007 to 2009, that only consists of two out of the nine years Dr. Oakman treated Plaintiff. That vast majority of the time Dr. Oakman treated Plaintiff she was—as she later admitted—drinking alcohol. (See, e.g, Tr. 782 (indicating that Plaintiff reported that from approximately October 2009, to April 2012, she was "consuming ½ liter of vodka three times per week"); Tr. 1046 (indicating that on May 8, 2015, Plaintiff reported that from approximately 2010 through 2015 she drank "off and on" while starting in 2015  she would drink "1/2 gal liq" per day then "not [drink] for a couple weeks")). Moreover, as Dr. Oakman stopped treating Plaintiff in November 2014, (Tr. 1137), it appears many of the instances when Plaintiff was drinking during the time she was treated by Dr. Oakman were actually admitted to by Plaintiff after Dr. Oakman stopped treating her, and there is no indication in the record that Dr. Oakman ever reviewed the records with these admissions by Plaintiff contained therein and generated after he stopped treating Plaintiff. (See, Tr. 1046 (providing Plaintiff's May 8, 2015, report that from approximately 2010 through 2015 she drank "off and on" while starting in 2015  she would drink "1/2 gal liq" per day then "not [drink] for a couple weeks," as well as, Plaintiff's May 8, 2015, report that she had lied about her substance abuse since childhood).

Accordingly, the Court concludes that the ALJ's decision to discount the opinion of Dr. Oakman was supported by substantial evidence in the record as a whole.

Consequently, the Court's review of the record as a whole indicates that the ALJ's decision that Plaintiff was not disabled as defined by the Social Security Administration was supported by substantial evidence in the record. [6]

---

[6] Specifically, on the Court's independent review of the record as a whole, the ALJ's RFC determination; his decision that jobs existed in significant numbers in the national economy which Plaintiff could perform, if she stopped her substance use; and the ALJ's determination that Plaintiff's substance use disorder was a contributing factor material to the determination of disability, were each supported by substantial evidence in the record.

Therefore, it is recommended that Plaintiff's Motion for Summary Judgment, [Docket No. 12], be **DENIED**, that Defendant's Motion for Summary Judgment, [Docket No. 14], be **GRANTED**, and that this matter be **DISMISSED with prejudice**.

## V.  CONCLUSION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.    Plaintiff's Motion for Summary Judgment, [Docket No. 12], be **DENIED**; and

2.    Defendant's Motion for Summary Judgment, [Docket No. 14], be **GRANTED**.

Dated:  July 23, 2018                                                      s/Leo I. Brisbois
                                                                                    Leo I. Brisbois
                                                                                    U.S. Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).